Good morning to the panel. I know it's been a long morning. My name is Stan Gibson and it's my privilege to represent the appellants PA and ROI insurance in this case. I would like to reserve three minutes for rebuttal. I would like to get the court to refocus into the world of maritime law. This court has a long tradition of dealing with maritime law cases. We are dealing here with a contract interpretation of a bill of lading. A bill of lading is the document contract used to transport goods over water. I'm sure you've been aware of the strike in LA recently where it's costing a billion dollars a day for that strike. Every bit of that cargo they're talking about moves into the United States under a bill of lading. So how the court interprets a bill of lading, what rules it applies to interpret a bill of lading is very, very important. In this case, I would urge the court to apply its tried and true interpretation. One, it's their document. They put it together. They picked it off the shelf. And if you have a hard time reading it, because it's too blurry, that is not the plainest problem. Judge Burns had a hard time reading it. Mr. Gibson, from my acquaintance with the rules of interpretation of contracts in 1635 at SAC of the Civil Code in California, we don't get to the contra proferentum rule until we go through a series of other interpretive devices. And the first one is, what is the plain meaning of the agreement? There's nothing unplain about the agreement, section four, regarding law and jurisdiction, is there? Absolutely. Absolutely. First of all... So then let's forget about who prepared it. Let's just read the document. California law is not applicable to this. All right. It's a maritime law. All right. Let's use maritime law. Is it any different? It says we read the document. And if it's ambiguous... But how is it ambiguous? Oh, you're talking about the jurisdiction clause? Yeah. It says, look on page one. And in there, it's going to give the state of it, the place of incorporation. They don't list it. No, it doesn't say place of incorporation. It says the principal place of business. Okay. They don't list the principal place of business in front of the bill of lading, in that box. All right. Okay. This is a minor issue. Judge Burns pooh-poohed it. But it's indicative of what's going on here. They're saying, oh, we didn't follow our contract completely, so ignore that. It's minor. Now let's get to the applicable law. They say subject to the U.S. Carrier Goods by Sea Act, on deck... Well, wait a minute. It doesn't say that signed for and on behalf of the carrier cross-chartering N.V., Antwerp? That's not in the right box. Page 1. Up above, it identifies the carrier cross-charter. What is this on page 1? Page 1 is what I read from. It's the box that just says cross-charter N.V. It doesn't say where the signature page is. It says Antwerp. We're not talking about signature page. Are we looking at the same thing, E.R. 73, Exhibit V. 8? Yes. E.R. 73. Exactly. Exactly. It says cross-chartering N.V. Disputes arising under or in connection with this bill of lading shall be exclusively determined by the law, by the courts, and in accordance with the law of the... That's hard to read. It's stated on page 1. The principal place of business is stated on page 1. It doesn't say in box anything. Okay. In page 1, it says Antwerp. Antwerp is in Belgium. Your Honor, let's look at the words on that box. It says carrier's name slash principal place of business. And they put cross-charter N.V. in there. All I'm asking this Court to do is not give the benefit of the doubt to the people who prepared and drafted this document. I think the most important point is the law that applies. It says principal place of business cross-chartering N.V. And below that, it's cross-chartering N.V., Antwerp. Antwerp is in Belgium. Of course it is. Of course it is. Why couldn't they write principal place of business Antwerp? How difficult is that? All it requires is that the name of the principal place of business be on page 1. Okay. Give them the benefit of the doubt. Let's go to your next argument. Yes, my next argument is much more subjective. This was just an example. The next argument is that when they say subject in the same page, subject, carried on deck with emergency consent, blah, blah, blah, in all the cases, subject to the provision of the United States Couriers of Goods by Sea Act, and they do not reference section 1C. And here's the problem. They don't reference section 1C? Of COGSA, which says I see. We incorporate all of COGSA into this, and all of COGSA includes section 1C, which defines goods as everything commercially normal except goods carried on deck under on-deck bill of lading. That creates an ambiguity. When the sorry. Pardon me. I think we're getting beyond the ruling on the motion. The motion is a motion to change of venue. Correct. You're arguing how this contract should be interpreted. One way of interpreting it is as you ask, but shouldn't that be what is to be done by the Belgian court? No, Your Honor. The U.S. Supreme Court, this Court needs to be guided by the U.S. Supreme Court's decision in the Sky River case, which involved enforcement of an arbitration clause sending the case to Japan. And the Court said if there were no subsequent opportunity for review, and if this Court affirms the district court and sends this case to the Belgian court, first prong is met. There can be no dispute about that. There will be no opportunity for this Court or any other U.S. court to review what the Belgian court does. We asked the district court to maintain jurisdiction. Didn't. Dismissed it. You're gone. Go to the Belgian court. But that always happens when you have a contractual change of venue or a contractual venue and law, choice of law clause. It does not always happen, Your Honor, if it's an arbitration clause like it was in the Sky River. The district court maintains jurisdiction, and in the Sky River case, the Supreme Court said we're not so concerned that they might get it wrong because there will be an opportunity to review at the confirmation of the arbitration award stage. This is a very important distinction. The Supreme Court has said if there is no subsequent opportunity to review, there is no case that says you can ignore that. And then it says if that operates in tandem with deprivation of rights under U.S. law, we would not hesitate not to send the case. And this is where the ambiguity comes in and the language that they chose in their bill of lading. We've cited cases that say if you incorporate COGSA, does that mean all of COGSA except 1C, which excludes application to goods on deck and carried under a non-deck bill of lading? Or does it mean we ignore 1C? Well, gee, it could be either one. It could be either one. So your best argument is because you can read something different than is in the That is my argument, Your Honor, absolutely, because 1C is a part of COGSA. So if I don't believe it, then are you lost? I'm sorry. So if I don't believe what you just argued, I read the language and it seems pretty obvious to me that it isn't ambiguous, you're just trying to come up with something to suggest it is, then you lose? I think so. I think so, Your Honor. What does 1C of COGSA say? 1C of COGSA says it defines goods and it says that It's carried on board. It's not within It says it applies to all goods, lawful merchandise carried to or from the United States except for goods carried on deck under an on-deck bill of lading. So you're stepping back from this. I mean, the standard is for enforcement of the clause is whether the substantive law in the chosen forum will reduce the carrier's obligations below what Correct. COGSA guarantees. Correct. And what COGSA guarantees in this case is there's a $500 limitation of liability, right, unless you declare an amount. COGSA prevents the carrier from going below that limit. The Harder Act and COGSA were all meant to protect people like my client from this fine print language to say, aha, you know. So where do we file suit? Where is it going to be? Do we file suit in the U.S. because 1C is not specifically excluded? And we've cited cases where courts have said 1C was not specifically accepted. What is a person, a low-level person, who is looking at a contract of adhesion? This Court in the C. Hart case said these bills of lading are contracts of adhesion. They communicate. Are you arguing that the Belgian court will apply COGSA and it should, or the Belgian court will apply COGSA and it shouldn't? I am arguing that the Belgian court under this bill of lading will apply Belgian law because COGSA, when it's incorporated, excludes application to this shipment because it's carried on deck under bill of lading. But it will apply Belgian law, and how is that more or less favorable? Belgian law says, will apply clause 3A of the bill of lading, which says we're not responsible for anything carried on deck. Zero liability. They are exonerated. Isn't that what COGSA says? What? Isn't that what 1C says? No. 1C says the COGSA statute does not apply as a matter of law to goods carried on deck under on-deck bill of lading. In fact, the harder act applies. The 1893 statute applies to all carriage to or from the United States and within the United States where COGSA doesn't. Counsel, I'm surprised by your argument here. In the lower court, it seems you were arguing Belgian courts couldn't be trusted to apply the law. Correct. I didn't find any place there that you argued the bill of lading is insufficient to clearly indicate that COGSA applies. Where did you make that argument in the lower court? We made the argument that harder act applied. Oh, I know. Well, that means COGSA does not apply. Well, just a minute. I didn't see any place there where you argued that the bill of lading is insufficient to indicate COGSA applies. Well, I think we certainly raised by definition we say harder applies because Well, but just because you say harder applies, I mean, I'm trying to figure out, because it seems to me that now you're trying to have me review this language, which before you did not even fight that this language would clearly indicate that COGSA applied. You just said, but the Belgian courts can't be trusted to apply this, and now you want me to overturn this on a different argument. Your Honor, Judge Burns said that COGSA was unambiguously incorporated into the bill of lading. That's when we had to raise the argument. It's in his decision, and we say it is not unambiguously. Did you file a motion to review his decision after he did that, before you came up here and made this argument? No. Well, that's why I'm a little concerned, because you go through this language as if you were arguing to him that it wasn't clear that COGSA would apply, and yet I didn't ever have him even think about that. You argued to him the Belgian courts couldn't be trusted to apply the law, and then I guess I'm having a tough time understanding why you changed your argument. I guess that's the reason. It's the same argument, Your Honor. We say the Harder Act applies. The Belgian court has no familiarity with the Harder Act. There's nothing in any of the declarations to say that they do. And I would really urge the court to look at this bill of lading and the interpretation, even if, let's say, COGSA does apply, it's going to be very clear that the Belgian court is unfamiliar with the fair notice and opportunity doctrine to have a limitation in place. Therefore, if we go there, my clients go there. They say, oh, well, it says COGSA applies. If you look at the back of the bill of lading, it says in case the bill of lading is subject to COGSA from the United States. And in the next paragraph, they say if COGSA applies. COGSA does not apply as a matter of law. That's what the word applies means. We've cited cases to that effect. COGSA does not apply. Will the Belgian court get that? What is the burden of a cargo owner to prove that the foreign court may not apply U.S. law when there's no opportunity for review? The burden is there's a risk. And our Mr. Marcon, our declarant of Belgian law, said they will likely default. There's a risk they will default to. Yes. So in his order, Judge Burns said that cross-charting and SSA agree that United States law, particularly COGSA and the fair opportunity doctrine, governs their liability. So they've already agreed to that. So how can the Belgian court apply Belgian law? They agreed to that, Your Honor, because their bill of lading is ambiguous. And Judge Burns relied on that. Of course they want COGSA to apply, because COGSA applies according to bill of lading. It's a $500 limitation, and $1.8 million goes out the window. Not if the fair opportunity issue is determined your way. And the court both, both. And they're saying that they agree the fair opportunity applies. Why can't the Belgian court take evidence on whether you had a fair opportunity? They can do that. But the courts are unfamiliar. They both, both lawyers, Belgian lawyers said they were unfamiliar with that concept. Let me ask you. Is there any reference in this contract to the Harder Act? None. There are multiple references to COGSA in the contract, correct? There are no. Yes. Well, I know one right there on the front page. And didn't both experts of both parties agree to this? No. No. Mr. Marcon said if COGSA doesn't apply, the default is going to be Belgian law. Mr. Wiffel, I hope I'm saying his name correctly, resolved the ambiguity in favor of the application of COGSA. He did not mention 1C at all. He did not mention that at all. Mr. Marcon says we do not share Mr. Wiffel's view that reference to COGSA would require a Belgian court to make the entire U.S. law applicable to this matter. Absolutely correct. Meaning the fair opportunity issue. And, and, and other, the fair opportunity, and Your Honor. Do a little offer of proof to me on what you would argue under the fair opportunity issue. Yes. First of all, I argue the Harder Act applies, and therefore the bill of lading doesn't have any limitation at all. First thing, that's what I'd argue under U.S. law. They would say we don't know that. Wait. Okay. But why didn't you have a fair opportunity to stick in a definition value? Because the bill of lading doesn't give that notice. It says on-debt carriage subject to U.S. COGSA. And then you go to the back of the bill of lading, and it says if this is carriage, it's to or from. On the bottom right-hand corner, if you have a hard time reading it, that shouldn't be to the detriment of my client. That's to the detriment of the people who used this bill of lading and issued it. On the bottom right-hand corner, it says subject to, if this is to or from the United States, subject to U.S. COGSA. Then the last paragraph, bottom right-hand corner, it says if COGSA applies. COGSA does not apply. They agree. Look on page 10 of their brief. COGSA does not apply as a matter of law. Does not apply. It's by contract only. It does because COGSA is taken out of this. And they agree with that. You look on page 10 of their brief. They say it doesn't apply exproprio vigore. COGSA does not. It's another term of the contract, another term of the contract. So I would argue, first of all, COGSA does apply as a matter of law. There is no limitation. Secondly, because of that ambiguity and that lack of clarity, where is the notice and opportunity? Where is it? Where is the notice? It says subject, in all their cases, subject to U.S. COGSA. It doesn't say $500 per package. It's $500 per package. It's their document. They could have put that right on the front. Why didn't they? We're going to rely on the fine print on the back to do this. And I think that's what the Harder Act tried to prevent. That's what COGSA tries to prevent. And that's why this Court has interpreted in the past contracts of adhesion. Any ambiguity is interpreted against the maker of that document. Okay. Well, you're over your time. Yes, I am. Good afternoon, Your Honor. I'm going to ask Mr. Allen Nakazawa for the cross-chartering, which is the ocean carrier. If I may just respond briefly to some of the statements and arguments made by counsel. If you go over to Belgium and present this case, are you going to stipulate that COGSA and the Fair Opportunity Doctrine apply? Yes, Your Honor. We did that in the district court for purposes. We agree that U.S. COGSA applies by virtue of the typewritten clause on the front of the bill of lading. The plain and ordinary meaning of that clause can only mean that the yacht would be carried on deck with the consent of the shipper slash cargo owner, and that it would be subject to the carriage by SEAHAT. That's the plain, ordinary meaning. We agree below that COGSA applies. But as I understand, the Fair Opportunity Doctrine is something that has been added on as a wrinkle, you know, judicial interpretation, and you would agree that that applies, too. That's correct, Your Honor. We agree that the Fair Opportunity Doctrine would apply and that we satisfy the Fair Opportunity Doctrine in this case. But, of course, that argument should be made to the Belgium court, and the Belgium court should be allowed to make that decision. I heard his offer of proof under the Fair Opportunity Doctrine. What would be yours? I'm sorry? What would be your argument under the Fair Opportunity Doctrine? As to that it was satisfied in this case? Yes, exactly. My argument to the Belgium court would be that the clause, that the carrier satisfies the Fair Opportunity requirement by reciting, one way to satisfy it, is by reciting the language of Section 1304 of COGSA, the Package Limitation Provision in the Bill of Lading. We did that in the last paragraph of the Bill of Lading at the bottom. That is our prima facie case of fair opportunity, and then the burden shifts to the cargo owner to disprove fair opportunity. Now that clause at the reverse side, it says, if COGSA applies the limitation of the carrier will be $500 unless the shipper declares a higher value and opts out of the limitation. The shipper did not do that in this case. COGSA applies as a matter of contract, pursuant to the typewritten clause on the front of the Bill of Lading. I have a problem, Mr. Nakazawa. Maybe you can help me out. Maybe I'm now usurping the role of the Belgian court. But read along with me on this. On the face of the Bill of Lading it says, carried on deck with merchant's consent and at their risk as to perils inherent in such carriage without liability and or responsibility to the vessel or carrier. Now stop right there. That doesn't say anything more nor less than Section 1C does, right? Section 1C, Your Honor, provides that deck cargo does not come with the definition of goods. Of goods. And therefore, it can be excluded from liability for negligence, fault or failure. That's right. But it's very common, as was done in this case, to agree to apply COGSA, which otherwise would not apply. So this clause is somewhat redundant with Section 1C of COGSA. No, it actually incorporates COGSA. Incorporates COGSA. All right. It essentially says, yes, that 1C, notwithstanding 1C, that COGSA does apply. Because COGSA does not normally apply to deck cargo. All right. This also says no risk as to deck cargo, right? No. So now the next thing is, but in all other respects subject to the provision of COGSA. So what seems to me to be saying is that other than deck cargo being excluded, which COGSA does and which this phrase does, all other portions of COGSA apply. Is that correct? COGSA does apply. All of it does apply. The only What this clause says, Your Honor, is that the cargo is carried on deck, the yacht's carried on deck, except for perils inherent in the carriage of cargo on deck. And in all other respects, that is, except for perils inherent in the carriage. Let me ask you this question. If there were a conflict between the language of the exclusion, which I've just read, and COGSA 1C, which would govern? Well, the typewritten clause, of course, prevails over the printed portion. So, therefore, as to deck cargo that was injured. Yes. By perils not inherent in such carriage. All right. Yes. For instance, a thunderbolt. Or salt water. No, salt water would be inherent in the carriage. That's what I'm saying. That's inherent. Then, perhaps, this clause would allow recovery, whereas COGSA would not. COGSA does not apply. I mean, I'm sorry. COGSA applies to the deck cargo in this case by virtue of contract. COGSA's liability rules apply. COGSA does require that the carrier exercise due diligence in the care of the cargo. But not as to goods. No. Not as to deck cargo. COGSA did not apply, Your Honor. That then the argument could be, and we're not making that argument here because COGSA applies in any event. The argument would be with respect to perils inherent in the carriage, the carrier is not liable. This is not the case where. What do you say to the argument of your learned friend that the Belgian courts simply can't handle COGSA? Well, Your Honor, we disagree, of course. Antwerp is the second largest port in Europe. It has a long history of maritime tradition and cases. Both counsel in Belgium agreed that U.S. COGSA would apply the case in Belgium. Would you say in interpreting this 500 per package, would you say a yacht is a package? Yes. There has been. The argument for us would be this, that the yacht is a package. It's cradled and therefore a package. And there are cases that would support that in the U.S. Are there cases that support that in Belgium, too? I do not know because Belgium has. I do not know how a Belgian court would apply the package. The Belgian court has a higher limitation under Belgian law because they have enacted the Hague Density Rules, which has a higher limitation. But to answer your question, I do not know whether a Belgian court would find a yacht is a package or not. But there are U.S. cases that have held that a yacht shipped in a cradle is one package for purposes of the limitation. And is the question under the fair opportunity doctrine, is that whether they had, whether PAE had the fair opportunity to insert a declared value? Yes. Well, it really comes down. It's a judicial doctrine, and there's no language in Cogsa that requires it. But the courts have said essentially, look, they need to have notice and a fair opportunity to opt out of the package limitation. And as I said, one way you do it is you recite the language in the Bill of Lading, like we had in the U.S. Trade Clause, that says that our limitation will be $500 per package or customary freight unit unless you declare a higher value. Does the cost of carriage go up if a higher value is declared? Yes. Typically, the higher freight would be charged if you want to opt out of the limitation. In this case, of course, they got cargo insurance, so they probably weren't concerned. They wanted the lowest freight rate. So who puts in the none and the N-A in the box? Oh, that's the Bill of Lading, of course, prepared by the carrier. And if you would look at the booking note, which is the note that confirms the carriage, that on the face says that the shipper declares no value. It says that the shipper declares no value and the $500 package limitation applies. That's in the booking note, and that's the document that's signed by both parties before the Bill of Lading is issued. So hypothetically, a reasonable business person who was shipping something of substantially greater value than $500 might make a rational decision not to declare it there but to get some other forms of insurance or whatever. That's right. They could either opt out, pay the extra freight, or they could buy cargo insurance, which is typically what they do, Your Honor. Very few people would declare a higher value and opt out. So if this thing goes to Belgium, are you all taking a trip? Well, in Belgium, like it would be here if we had foreign law that applied, they will require experts to testify on U.S. law, and I think that court is capable of applying U.S. law to this case. Again, both Belgium counsel agreed U.S. Cogs is a fine country, applied to the Bill of Lading. They only disagreed as to the ability of the Belgian court to apply U.S. maritime law, and Mr. Marcon, his declaration was found unconvincing, vague, and speculative as to the ability of the Belgian court. As a result, the district court correctly found that the Belgian court was capable, had the ability to apply U.S. maritime law to this case. What if the Belgian court decides that Cogs doesn't apply? I'm sorry? What if the Belgian court says, I don't care what you stipulate. We don't think Cogs does apply. Well, they certainly have that right to make that decision, but based on the opinion of their counsel, which in paragraph 5 of his declaration, Mr. Marcon's declaration, he does say under the typewritten clause, U.S. Cogs will apply except for perils inherent in the deck carriage. Isn't it also true? Mr. Gibson's point that if we affirm the change of venue order, there will be no effective review of what the Belgian court does in the United States, and what about the citation of the Sky Reefer case? Yes, Sky Reefer was an arbitration clause, and courts have stayed arbitration clauses pending the arbitration. But courts have not done that with respect to the forum clause. Bremen v. Zapata, Fireman's Insurance v. DSR Atlantic, the Ninth Circuit, they merely enforce the forum clause and allow the forum court to adjudicate the case. And an arbitration clause, Your Honor, is a subset of a forum clause, and the courts have held the same standard in evaluating the enforceability of a forum clause applies. And under Sky Reefer, it's to show that the party would be deprived of its – of the right to pursue its stationary revenues, or under DSR Atlantic, the Ninth Circuit, the court said that the party must show that the substantive law will be applied by the contractual forum would reduce the obligations of the carrier below what COPSA guarantees. Is that because it's a ruling under the Federal Arbitration Act? As far as – I'm sorry. As far as the difference between arbitration clauses and lack of arbitration clauses. I'm not sure why courts have stayed actions in the arbitration, but have not in the forum clauses. But courts have always enforced forum clauses without the State. If I may defer to Mr. McMillan for whatever time we have left. Two minutes, eight seconds. I'm counting. You're counting? Excuse me. Good afternoon, Your Honors. My name is Jim McMillan. I represent SSA Pacific. Incorrectly sued is Stevedore and Services of America, which is why you see Stevedore and Services of America in the case. Yes, this is a maritime case. But this matter just concerns the enforcement of a forum selection clause in an international commercial contract. There is no consumer contract. There is no local contract involved. And there is no attempt by this carrier to use in tandem a choice of law provision and a forum selection clause to subvert COPSA. That's not happening. You've heard us stipulate that here and in Belgium, U.S. COPSA applies to this contract. That's because that's what the contract says. As to deck cargo, deck cargo is one of those commodities that was exempted from COPSA. That's because the legislature wanted to allow people to exculpate themselves from deck cargo because the deck cargo is exposed to the elements. So what we have is an entirely reversed argument here. But taking aside this argument that I think some of the courts, including this court, have perhaps called convoluted and syntactical, the matter concerns enforcement of a forum selection clause, and the parties are all international business trading partners. Appellees have urged in their papers, let's get away from the parochial view that somehow the Belgian courts cannot interpret a contract as well as the U.S. courts and our local jurisdictional courts. Can I ask you a question? Sure. You're the stevedoring company that unloaded the yacht? Yes. Are you, do you contract, do you have a separate contract with? Cross-chartering. Cross-chartering to do that? Yes, we do. And is there an independent basis of liability against your client from that under maritime law than that of the carrier? Not to the consignee shipper cargo interests and their subrogated cargo insurance carrier. That's because that's in the contract? Well, that is in the contract. That's clause 15. Okay. And this court recently issued a decision called federal insurance, which makes it clear that the clause in the contract that says he may recover against the vessel or the carrier who issues the bill of lading, but he is not permitted to sue all of their agents, has been enforced. And so liability directly against agents of the carrier is not permitted under the terms of this contract, and that provision has been upheld by this court. Yes. I think in 2011. That's the federal insurance. And so what we're looking at here and what this case boils down to is counsel's position together with his expert witness, Mr. McCrone or McCone, that the Belgian courts are not sufficiently skilled to somehow interpret U.S. law. Yet what we're talking about here is just the enforcement of a forum selection clause. We're going to get away from that parochial concept by looking at, among other things, what's the course in dealing of these parties? And the court raised the issue of fair opportunity. Well, the appellant shippers and their cargo insurers have shipped yachts 140 times with cross-chartering, and the dispute resolution in Antwerp, Belgium, has been in every one of those. Additionally, every time they had the opportunity to declare the value of the yacht, what did they declare in this case? In their booking notice, they put zero, and on the bill of lading, the value is listed as none. As a result of that, they got a minimal freight rate assigned to their shipment, and that inured to their benefit at every leg of this transportation. If, instead, the agents of the shipper and the agents of the steamship company carrier and the steamship company were required to virtually insure this cargo every step of the way, and you've probably seen by the cases we've cited, yachts get dropped all the time. I was surprised to learn that. In this particular case, it was a tandem lift with the actual cranes that came on the vessel. And so you have one longshoreman on one crane and one on the other, and they have a cradle, and they're taking the yacht and trying to put it in the water. For wee potato men, that was good. It was a little bit of a misadventure. The yacht did make it in the water, but not in the condition they hoped. So what's going on here is – The other thing we wondered is why it sank so quickly. Well, that's a good question. The Coast Guard was there very rapidly, and a crew was standing by,  And as you can imagine, the rail is a huge steel structure on this vessel, and it probably broke the back of the sailboat. Interesting. You're over your time, and I'm digressing, so. Okay. Well, this is the bottom line. The bottom line is that us on the West Coast of the United States should give respect and consideration and certainty to our overseas business partners. This is a court that is in Belgium, and Belgium is what? The headquarters of the European Union, the headquarters of NATO. It's where the Brussels Convention on Bills of Lading was held. I happen to have a friend who was the U.S. ambassador to Belgium, so very familiar. The point is, if we aren't going to trust the courts in Belgium – And by the way, just like here, Belgium actually have courts of review as well. You know, they do have appellate courts, and so there will be review of the decision. And as Judge Burns indicated, he had never seen a bill of lading. He didn't know what a bill of lading was, and he had never heard of COGSA before issuing his decision. It didn't stop him from engaging in the intellectual exercise and getting what was necessary to decide this case properly. So his decision should be affirmed. Thank you. Thank you. Yes. Just to respond directly, Judge Burns very candidly admitted he wasn't familiar with COGSA, and he missed one C. He missed reading the entire part saying that COGSA doesn't apply to goods carried on deck. Secondly, as Mr. Nakazawa just said, and this goes back to the contract of adhesion strict interpretation against the drafters, he says, notwithstanding one C, he said that, notwithstanding one C, COGSA applies to this carriage. The words notwithstanding one C could have been put in there. It would have been clear. My client wouldn't have to go to a maritime law professor to say, where do I sue? Do I take a chance in the United States, or do I have to go to Belgium, and they may not understand this law? That's the dilemma this ambiguous bill of lading puts onto a person who's bringing in a yacht in my client's situation. With respect to Mr. McMillan, no bills of lading, previous bills of lading are in the record. We have no idea what they say. None. With respect to reference to the booking note, once again, strict interpretation, the booking note says it will be superseded by the bill of lading. That language is their language in the booking note. I don't think there could be any reference to the booking note. It is gone by their own terms. Finally, with respect to the clause the Federal Insurance Company, the court, Federal Insurance Court, relied on, that they're relying on, to say we can't sue California, the stevedores directly because of the contract that says you can't sue our servants. I'm going to quote for you Grace, Inc. v. Top Shipyards, a Ninth Circuit 1974 case. It is the holding of this court that a contract, no matter how clear and expressed, which purports to wholly immunize a non-carrier, that's like SSA, from liability for its negligence, is repugnant to traditional law and to sound policy. Since the Himalaya clause in this case purports to exempt the non-carriers completely from any liability for negligence and thereby strongly tends to induce negligence, the bill of lading to that extent is void. This is a Ninth Circuit decision. I would urge you to look at my reply brief, re-read that. The Federal Insurance Court did not even discuss that decision. So now we have a conflict within the Ninth Circuit. How is a Belgian court going to resolve that? Thank you very much, counsel.
judges: Wardlaw, Bea, Smith